**In re Abraham BORUM, Debtor.**

**Bankruptcy No. LR 85–647F.**

United States Bankruptcy Court,
E.D. Arkansas, W.D.

Feb. 21, 1986.

Marquis Jones, Little Rock, Ark., for debtor.

A.L. Tenney, Little Rock, Ark., trustee.

John M. Jewell, Little Rock, Ark., for creditor.

## MEMORANDUM OPINION

ROBERT F. FUSSELL, Chief Judge.

### Background

On August 29, 1985, the Court held a pre-trial conference regarding the objections to confirmation filed by A.L. Tenney, the trustee; Charles F. Curry; and Southern Investment Company and at the same time held a hearing regarding the counterclaim filed by debtor on September 25, 1985. In the counterclaim, as amended by his post-trial brief, the debtor alleges (1) that the contract of September 7, 1979, between debtor and Southern Investment Company (the "Contract") is usurious and (2) that Southern Investment Company has waived its right to foreclose on the property subject to that Contract by reason of laches and the running of the statute of limitations. The issues raised by those two allegations in the counterclaim have been submitted to the Court for decision upon the parties' post-trial briefs along with copies of the September 7, 1979 Contract, the Note executed in connection with the Contract, and the record of payment made by the debtor and Patricia Borum in regard to the indebtedness evidenced by the Note and Contract.[1]

### Specific Findings of Fact

1. Debtor Abraham Borum, Jr., filed for relief under chapter 13 of title 11 of the United States Code on May 6, 1985.

---

1. Southern Investment Company and Charles F. Curry may renew their requests for hearing on their objections to confirmation of the plan following entry of this Memorandum Opinion and Order. Further, since the August 9, 1985 pre-trial conference, Southern Investment Company has filed a motion to dismiss the debtor's counterclaim for failure of the debtor to submit the post-trial brief on the date he was ordered to file the brief by this Court. In effect, the debtor submitted the brief three days late. If Southern Investment Company plans to pursue that motion, it should request a hearing upon receipt of this Memorandum Opinion and Order. If not, the motion should be withdrawn in writing.

2. The Debtor listed Southern Investment Company as a creditor based upon an indebtedness arising out of a Contract and Note between the parties dated September 7, 1979.

3. Under the September 7, 1979, Contract, Abraham Borum, Jr., and Patricia A. Borum, his wife, were to purchase from Southern Investment Company the following described property within Pulaski County, Arkansas:

The North 10 feet of Lot 16, all of Lot 17, and the South 10 feet of Lot 18, Block 35, Industrial Park Addition to the City of Little Rock, Arkansas, and subject to all rights-of-way and easements.

4. The purchase price under the contract of sale was $12,937.50 with credit thereon for the $237.50 in cash paid by the Borums on the date the Contract and Note were executed and another $200.00 in credit given for deposit and rent previously paid, leaving a balance owed of $12,500.00, as reflected by the Note.

5. The contract itself provides as follows:

If the buyer ... allows said monthly payment to become delinquent for more than thirty days, [Southern Investment Company] may, at its option, either declare the entire balance of the purchase price due and collectible or rescind this contract....

The failure, however, of [Southern Investment Company] to exercise any option herein given at the time of default shall not operate to bar or abridge its right to exercise such option upon any subsequent default of [the Borums].

6. Also, on September 7, 1979, the Borums executed a Note evidencing the balance due of $12,500.00, bearing interest from date until paid at the rate of 10% per annum, payable in monthly installments of $110.00 each, beginning on October 15, 1979.

7. There is no provision in the Contract or Note for a charge to be assessed if a monthly payment is late.

8. The payment records submitted by debtor with his post-trial brief reflect that from the outset of the scheduled payments, the debtor was late with his payments and/or made monthly payments of less than $110.00, the sums required monthly under the Contract.

9. In fact, the debtor has been continuously behind in the payment of interest on the debt and has only on a few occasions made timely payments in sufficient amounts to reduce the principal.

10. The payments have reduced the principal to $12,252.90 as of the August 29, 1985 hearing.

11. In May, 1980, Southern Investment Company began to charge a "late charge" when a monthly installment payment was not made on time.

12. The "late charges" were one-time fixed dollar charges which were not assessed to the debtor if the debtor paid the installment on time.

13. Even after late charges were assessed, the debtor continued to make only intermittent payments, generally less than the $110.00 required per month by the Note and Contract.[2]

14. The schedules reflect that the last payment on the Note was made on March 4, 1985.

15. Southern Investment Company filed its proof of claim in June of 1985 along with its objection to the debtor's proposed plan.

*Issues*

I. Has Southern Investment Company waived its right to foreclosure under the September 7, 1979 Contract and Note by reason of laches and the running of the statute of limitations?

---

**2.** Evidence regarding the exact amount paid to date on the indebtedness has not been presented at this time.

II. Should the Contract and Note of September 7, 1979 between debtor and Southern Investment Company be declared usurious?

### Additional Findings of Fact and Conclusions of Law

#### I. *Waiver of Right to Foreclose*

 In deciding the issue of whether Southern Investment Company has waived its right to foreclose through laches and the running of the statute of limitations, the Court looks to the language of the Contract and the applicable laws in Arkansas. Ark.Stat.Ann. § 37–209 (1962 Repl.) provides:

> Actions on promissory notes, and other instruments in writing, not under seal, shall be commenced within five (5) years after the cause of action shall accrue, and not after.

When recovery is sought on an obligation payable in installments as is the case here, the statute of limitations runs against each installment from the time it becomes due. *Linke v. Kirk*, 204 Ark. 393, 162 S.W.2d 39 (1942). In addition, "[p]art payment, before the bar attaches, forms a new point from which the statute will run." *Smith v. Grimsley*, 215 Ark. 279, 220 S.W.2d 428 (1949), quoted in *Johnson v. Gammill*, 231 Ark. 1, 328 S.W.2d 127 (1959). The payment schedules submitted in this case reflect that the debtor has made partial payments in each year since the execution of the Note, with the most recent payment being made on March 4, 1985. Therefore, the statute of limitations will not run for actions on the Note until March 4, 1990, five years from the date of the last payment. Ark.Stat.Ann. § 37–209.

 Further, since Southern Investment Company brought the action within the permissible time frame of the Contract and Note and within the statute of limitations relevant thereto, Southern Investment Company was not guilty of laches. *Ac-* *cord, Delta Oil Co. v. Catalani*, 276 Ark. 66, 633 S.W.2d 1 (1982).

#### II. *Usury*

 The debtor argues that the Note and Contract are usurious, presumably because Southern Investment Company assessed late charges when the debtor failed to pay the installments on time. The defense of usury is available to a debtor. *In re Miller*, 21 F.Supp. 644 (S.D.N.Y.1937). However, since usury is merely a statutory offense, federal courts faced with deciding whether a contract is usurious must look to the substantive laws of the state for the answer. *Missouri, K&T Trust Co. v. Krumseig*, 172 U.S. 351, 355, 358–59, 19 S.Ct. 179, 181, 43 L.Ed. 474 (1899); *Speare v. Consolidated Assets Corp.*, 367 F.2d 208 (2nd Cir.1966). It is not disputed that Arkansas law is relevant to the Contract and Note now under consideration. Accordingly, the applicable state law for this case is found in the Arkansas Constitution:

> All contracts for a greater rate of interest than ten percent per annum shall be void, as to principal and interest, and the General Assembly shall prohibit the same by law; but when no rate of interest is agreed upon, the rate shall be six percentum per annum.

Ark. Const. Art. 19, § 13.[3]

 Neither the Contract nor the Note is usurious on its face since the rate of interest agreed upon therein is ten percent, the maximum allowed under Arkansas law at that time. *Id.* If an instrument is not usurious on its face, the burden of proving usury is on the borrower, the debtor herein. *Dreyfus Co., Inc. v. Tim Wargo and Sons, Inc.*, 282 Ark. 468, 668 S.W.2d 957 (1984). It is also true that the debtor must prove that there was an intent to charge more than ten percent to constitute and prove usury. *Textron, Inc. v. Whitener*, 249 Ark. 57, 458 S.W.2d 367 (1970) (pre-Amendment 60). Furthermore, the intent

---

**3.** Amendment No. 60 amending Article 19, § 13 was passed by the voters on November 2, 1982, changing the maximum lawful rate of interest on contracts entered into after the effective date of the Amendment. It is not applicable here.

to charge a usurious rate will never be presumed, imputed or inferred where the opposite result can fairly and reasonably be reached. *Rhode v. Kremer*, 280 Ark. 136, 655 S.W.2d 410 (1983). In addition, the debtor must meet his burden on the issue by clear and convincing evidence. *Johnson v. Federal Nat'l Mortg. Ass'n*, 271 Ark. 588, 609 S.W.2d 60 (1980).

In a 1980 case involving the question of usury, the Arkansas Supreme Court reasoned that, if "late charges" assessed are a mere cloak for charging more than ten percent interest, contract upon which those late charges were assessed is usurious. *Bunn v. Weyerhaeuser Co.*, 268 Ark. 445, 598 S.W.2d 54 (1980). As the Arkansas Supreme Court stated in *Bunn:*

> It does not matter whether the added charges are called a "penalty," "late charge," "service charge," or some other name, we look to the facts of each case to determine whether the additional charges are a cloak for usury; and, if they are, the contract is void.

*Id.* at 450, 598 S.W.2d at 57.

Accordingly, if the "late charges" assessed here were a mere cloak for charging interest, this court would declare the Note and Contract usurious. However, the facts in *Bunn* are not analagous to those now before the Court. In *Bunn*, a 1.5% per month charge on the outstanding overdue balance of an open account, while labeled a "service charge" was found to be usurious because it was actually a charge for the use of money over time. *Id.* at 449, 598 S.W.2d at 56. The debtor in *Bunn* had no way of avoiding the monthly charge after his accounts were 60 days past due. *Id.* Those facts are not present in this case. Here, the "service charge" is a fixed one-time penalty of a set dollar amount which is assessed when the debtor fails to pay on time. The debtor has complete power to avoid the "late charge" merely by paying his monthly installment on time. A similar assessment for "late charges" was determined to be a legitimate penalty, not interest, by the Arkansas Supreme Court in *Hayes v. First Nat'l Bank of Memphis,*

256 Ark. 328, 507 S.W.2d 701 (1974) (cited as an example of legitimate late penalty in *Bunn* ) ("a 'late charge' is in the nature of a penalty and does not render the transaction usurious").

Therefore, after carefully considering the facts now before the Court, based upon Arkansas law and a review of the Arkansas cases interpreting what constitutes a legitimate penalty as opposed to an unlawful cloak for charging more than 10% interest, this Court determines that the debtor failed to prove by clear and convincing evidence either that Southern Investment Company intended to charge more than 10% interest, or that the "late charges" were, in fact, a cloak for charging more than 10% interest. The Court finds that "late charges" assessed were a legitimate penalty and that the Contract and Note should be, and hereby are, declared to be free from usury.

IT IS SO ORDERED.

A separate Order in accordance with this Memorandum Opinion is being entered this date.